DET026205

Case: 2:10-mc-51358
Judge: Steeh, George Caram
MJ: Morgan, Virginia M
Filed: 12-14-2010 At 03:49 PM
IT'S MY PARTY INC v LIVE NATIO
N, INC (SJ)

UNITED STATES DISTRI

FOR THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

30

IT'S MY PARTY, INC., et al.,

       Plaintiffs.                         Case No. 1:09-cv-00547-JFM

v.                                Pending in the District of Maryland

LIVE NATION, INC.,

       Defendant.

## NON-PARTY OBJECTIONS & MOTION TO QUASH SUBPOENA

Non-party Palace Sports & Entertainment, Inc. ("Palace Sports"), pursuant to Fed. R. Civ. P. 45 including (c)(1), (c)(2)(B), (c)(3)(A)(i, iii, iv), and (c)(3)(B)(i), objects to plaintiffs' Subpoena, and moves to quash, for the reasons stated in the brief below, with supporting Exhibit 1 (the Subpoena) and Exhibit 2 (Affidavit).

On December 13, 2010, there was a conference among the attorneys for the parties and for Palace Sports, in which the nature of the motion and its legal basis was explained and concurrence in the relief sought was requested of plaintiffs' counsel but could not be obtained.

DYKEMA GOSSETT · A PROFESSIONAL LIMITED LIABILITY COMPANY · 39577 WOODWARD AVENUE · SUITE 300 · BLOOMFIELD HILLS, MICHIGAN 48304

## BRIEF IN SUPPORT OF NON-PARTY OBJECTIONS & MOTION TO QUASH

### ISSUE PRESENTED

Whether a non-party has valid objections to and grounds to quash plaintiffs' subpoena under Federal Rule of Civil Procedure 45, where the vast majority of the documents sought can be obtained by plaintiffs from the defendant; when the remainder of the documents that would not be within defendant's possession would be confidential, privileged, and irrelevant; and where compliance would require the non-party to engage in a massive, costly, unduly burdensome search that should not be imposed on a non-party in these circumstances.

# CONTROLLING AUTHORITIES

## Cases

*Broussard v. Lemons,*
186 F.R.D. 396, 398 (W.D. La. 1999) ........................................................................ 6

*Builders Ass'n of Greater Chicago v. City of Chicago,*
2002 WL 1008455 (D.C.Ill.2002) ........................................................................... 14

*Collins & Aikman Corp. v. J.P. Stevens & Co.,*
51 F.R.D. 219, 221 (D.S. S.C. 1971) ........................................................................ 6

*Compaq Computer Corp. v. Packard Bell Electronics, Inc.,*
163 F.R.D. 329 (D.C.Cal.1995) ............................................................................. 14

*Everco Industries, Inc. v. OEM Products Co.,*
362 F.Supp. 204, 206 (N.D. Ill. 1973) ..................................................................... 8

*In re Northshore University Healthsystem,*
254 F.R.D. 338, 343 (N.D. Ill. 2008) ...................................................................... 9

*In re Smirman,*
267 F.R.D. 221, 223 (E.D. Mich. 2010) ................................................................... 6

*In re Subpoena Duces Tecum to AOL, LLC,*
550 F.Supp.2d 606 (E.D. Va. 2008) ........................................................................ 9

*Katz v. Batavia Marine & Sporting Supplies,*
984 F.2d 422, 424 (Fed. Cir. 1993) ......................................................................... 6

*Kean v. Van Dyken,*
2006 WL 374502, *5 (W.D. Mich. 2006) ................................................................. 6

*Mattel, Inc. v. Walking Mountain Productions,*
353 F.3d 792 (9th Cir. 2003) ............................................................................... 11

*Metro-Goldwin-Mayer Studios, Inc. v. Grokster, Ltd.,*
218 F.R.D. 423, 424 (D.C. Del. 2003) ..................................................................... 6

*N. Carolina Right to Life, Inc. v. Leake,*
231 F.R.D. 49, 51 (D. D.C. 2005) ........................................................................... 6

*Nova Biomedical Corp. v. i-STAT Corp.,*
182 F.R.D. 419 (D.C. N.Y. 1988) ........................................................................... 6

*Omokehinde v. Detroit Bd. of Educ.,*
251 F.R.D. 261, 265-67 (E.D. Mich. 2007) .............................................................. 4

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY•39577 WOODWARD AVENUE•SUITE 300•BLOOMFIELD HILLS, MICHIGAN 48304

*Spears v. City of Indianapolis*,
   74 F.3d 153 (7th Cir. 1996) .................................................................................. 14

*Surles v. Greyhound Lines, Inc.*,
   474 F.3d 288, 305 (6th Cir. 2007) ....................................................................... 12

*Thomas v. IEM, Inc.*,
   2008 WL 695230, \*3 (M.D. La. 2008) ............................................................... 13

*Tiberi v. CIGNA Ins. Co.*,
   40 F.3d 110, 112 (5th Cir. 1994) ......................................................................... 11

*Travelers Indemnity Co. v. Metropolitan Life Insurance Co.*,
   228 F.R.D. 111, 113 (D.Conn. 2005) ..................................................................... 8

*United States v. Markwood*,
   48 F.3d 969, 982 (6th Cir. 1995) ......................................................................... 11

*Wiwa v. Royal Dutch Petroleum Co.*,
   392 F.3d 812, 818 (5th Cir. 2004) ......................................................................... 6

**Rules**

Fed.R.Civ.P. 26(b)(2)(C) ................................................................................... 4, 12

Fed.R.Civ.P. 26(c) ........................................................................................... 12, 14

Fed. R. Civ. P. 45(c)(1) ....................................................................................... 1, 14

Fed.R.Civ.P. 45(c)(2)(B)(i, ii) .............................................................................. 1, 2

Fed.R.Civ.P. 45(c)(3)(A) .......................................................................... 2, 5, 7, 11, 13

Fed.R.Civ.P. 45(c)(3)(B) ....................................................................................... 2, 8

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE·SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

## A. SUMMARY OF OBJECTIONS & MOTION TO QUASH

Palace Sports & Entertainment, Inc. operates multiple concert venues in the Metro Detroit area, and was served with a subpoena in a Maryland case where a Maryland concert venue and promoter has sued Live Nation, Inc., complaining, *inter alia*, that Live Nation uses its market power to cause artists to play in a Live Nation-owned venue instead of plaintiffs' venue.

The Maryland plaintiffs served an unduly burdensome subpoena on the non-party Palace Sports, essentially seeking a massive and expensive search for every document and piece of electronic data that exists, relating in any way to Live Nation and any artist's performance at DTE Music Energy Theatre since January 1, 2004, including emails, correspondence, negotiations, agreements, term sheets, deal sheets, etc.

Rule 45 was adopted to protect non-parties from precisely this kind of undue burden. Most of the subpoenaed documents can be obtained from Live Nation, which as the defendant should bear the burden of producing the documents or litigating whether they should be produced. The remainder of the documents sought (that Live Nation would not have) would be confidential, privileged, and irrelevant. Compliance would require Palace Sports to engage in a massive, costly, unduly burdensome search that should not be imposed on a non-party in these circumstances. The objections of Palace Sports are valid, and the subpoena should be quashed.

## B. GOVERNING STANDARDS UNDER RULE 45

Subpoenas to non-parties are governed by Rule 45 of the Federal Rules of Civil Procedure, which protects non-parties served with subpoenas, and requires that a court "order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed.R.Civ.P. 45(c)(2)(B)(ii). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed.R.Civ.P. 45(c)(1).

Palace Sports has objections to the Subpoena, which alone prevent any obligation to comply until plaintiffs file a motion to compel production.  Fed.R.Civ.P. 45(c)(2)(B)(i).

However, Palace Sports also filed a motion to quash, because Rule 45 could be construed to require a timely motion to quash in order to assert certain of the types of objections at issue. Indeed, the Subpoena here presents "must quash" situations under Rule 45(c)(3)(A), which provides that "the issuing court must quash or modify a subpoena that:

> (i)     fails to allow a reasonable time to comply; …
>
> (iii)    requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv)     subjects a person to undue burden."

The Subpoena here also presents a discretionary "may quash" situation under Rule 45(c)(3)(B), whereby "the issuing court may, on motion, quash or modify the subpoena if it requires:  (i) disclosing a trade secret or other confidential research, development, or commercial information…."  Those judicial powers should be exercised to quash the Subpoena here.

### C. SUBPOENA IS OBJECTIONABLE, AND SHOULD BE QUASHED.

1.     **Background on the Subpoena**.  Palace Sports is a Michigan corporation which, among other things, manages multiple venues in the Metro Detroit market that host live concerts and other entertainment, including the Palace of Auburn Hills, DTE Energy Music Theatre, and Meadowbrook Music Festival.

2.     Palace Sports is not a party to the instant civil action pending in Maryland.  In that Maryland case, plaintiffs are the management company and promoter for a single outdoor venue in the Baltimore/D.C. entertainment market (Merriwether Post Pavilion).  Plaintiffs have sued a concert promoter (Live Nation, Inc.) alleging, *inter alia*, that Live Nation controls certain markets by enticing or coercing artists to play only at venues that Live Nation owns or operates,

DYKEMA GOSSETT, A PROFESSIONAL LIMITED LIABILITY COMPANY•39577 WOODWARD AVENUE•SUITE 300•BLOOMFIELD HILLS, MICHIGAN 48304

or controls through exclusive booking arrangements, such as Live Nation's Nissan Pavilion which competes with plaintiffs' Merriwether Post Pavilion in the Baltimore/D.C. market.

3.      In the Metro Detroit market, Live Nation does not own or operate any concert venues competitive with the Palace Sports venues.   Live Nation has no exclusive booking arrangements with Palace Sports or any of its concert venues.   Live Nation books some but nowhere near all the acts that play at Palace Sports venues.   For example, Live Nation books about 40% of the acts that play at DTE Energy Music Theatre.   Plaintiffs' Complaint in the Maryland case names several regional markets where Live Nation allegedly operates improperly, but does not mention the Metro Detroit market.

4.      Nevertheless, Palace Sports received a subpoena from counsel for the Maryland plaintiffs (the "Subpoena" -- copy attached as Exhibit 1), basically requiring the non-party Palace Sports to engage in a massive internal search for and production of documents (hard copy and electronic) including emails, correspondence, negotiations, agreements, term sheets, deal sheets, etc., basically every piece of paper and electronic data that exists, relating in any way to Live Nation and any artist's performance at DTE Music Energy Theatre for the seven year period from January 1, 2004 to the present.

5.      **Summary of Objections**.   The documents and information subpoenaed are voluminous, not easily retrievable, significantly and unduly expensive to locate and assemble, and then analyze, segregate and redact, since they inevitably will include privileged, confidential and otherwise objectionable documents that a non-party should not produce under any circumstances, especially to those with whom it does business and competes.   The subpoenaed documents for the most part are obtainable elsewhere, primarily from defendant Live Nation, and otherwise are irrelevant to plaintiffs' Maryland case.   In these circumstances, there is no

3

justification for forcing a non-party like Palace Sports to incur the undue burden and expense of complying with the Subpoena, which is objectionable on multiple grounds.

6.     **Documents Are Available From Defendant Live Nation**.  The description of documents sought shows that most should be in the possession of defendant Live Nation, as its counsel acknowledged in the December 13, 2010 call among counsel seeking concurrence in this motion.  Plaintiffs should obtain those documents from Live Nation, which as the defendant should bear the cost and burden of either producing the documents or litigating whether they constitute appropriate discovery given the nature of the case.  That burden should not be borne by a non-party like Palace Sports.  Under Fed.R.Civ.P. 26(b)(2)(C), "the court must limit the ... extent of discovery otherwise allowed by these rules or by local rule if it determines that ... (i) the discovery sought ... can be obtained from some other source that is more convenient, less burdensome or less expensive."  See also, *Omokehinde v. Detroit Bd. of Educ.*, 251 F.R.D. 261, 265-67 (E.D. Mich. 2007) (denying motion to compel where documents were discoverable by less burdensome means).

7.     Certainly, documents available from Live Nation should include all documents within Subpoena Requests 1 and 3, which seek:

> "1.     Each and every contract, memorandum of understanding, term sheet, deal sheet, confirmatory email or correspondence or other agreement, for Live Nation, including any current or former Live Nation employee, subsidiary or affiliate, to promote, co-promote, book, produce or sponsor any artist's performance at DTE Energy Theatre, anytime between January 1, 2004 and the present."

> "3.     Each and every contract, memorandum of understanding, term sheet, deal sheet, confirmatory email or correspondence or other agreement, for Live Nation, including any current or former Live Nation employee, subsidiary or affiliate, to receive a co-promotion or other fee for the performance of any artist(s) at DTE Energy Theatre, anytime between January 1, 2004 and the present."

4

Similarly, Live Nation should have most of the documents sought in Subpoena Requests 2, 4 &

5, which seek:

> "2. All documents generated during or reporting upon negotiations for Live Nation, including any current or former Live Nation employee, subsidiary or affiliate, to promote, co-promote, book, produce or sponsor any artist's performance at DTE Energy Theatre, anytime between January 1, 2004 and the present."

> "4. All documents generated during or reporting upon negotiations for Live Nation, including any current or former Live Nation employee, subsidiary or affiliate, to receive a co-promotion or other fee for the performance of any artist(s) at DTE Energy Theatre, anytime between January 1, 2004 and the present."

> "5. All documents generated during or reporting upon any discussions, negotiations, or offers to or from Live Nation to purchase, lease or enter into any joint venture or other type of business arrangement relating to the operation of the venue presently known as DTE Energy Theatre."

8. During the December 13, 2010 telephone call among counsel regarding concurrence in this motion, plaintiffs' counsel stated that some but not all the subpoenaed documents had been requested from Live Nation. Counsel for Live Nation conceded that Live Nation did have documents within the subpoena that had not been produced by Live Nation in discovery. Live Nation has objected that documents for the Metro Detroit market were not relevant. Plaintiffs' counsel stated that she had not filed a motion to compel the documents from Live Nation, and repeatedly refused to pursue getting the documents from Live Nation before seeking them from Palace Sports, but gave no reason other than to say she was not required to proceed in that sequence.

9. **Non-Party Should Not Be Burdened**. Unduly burdening the non-party Palace Sports is unreasonable, especially when the vast majority of the documents are obtainable elsewhere (and are of marginal relevance). Upon a timely motion, the Court must quash a subpoena that "subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A)(iv). Under Rule

5

45, "[i]t is incumbent upon counsel in the first instance to order discovery demands, particularly against nonparties, in such a way that the burdens of giving evidence are reasonable, under all the circumstances presented." *Metro-Goldwin-Mayer Studios, Inc. v. Grokster, Ltd.*, 218 F.R.D. 423, 424 (D.C. Del. 2003). "There appear to be quite strong considerations indicating that the discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents." *Collins & Aikman Corp. v. J.P. Stevens & Co.*, 51 F.R.D. 219, 221 (D.S. S.C. 1971). "Courts also consider one's status as a nonparty to be a significant factor in the undue-burden analysis." *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010). *See also N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D. D.C. 2005) (non-party status is a factor in determining whether a subpoena is unduly burdensome); *Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed. Cir. 1993) (non-party status "weigh[s] against disclosure" and is a "significant factor" in determining whether discovery is unduly burdensome); *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (court may consider that it is a non-party when assessing the expense and inconvenience of the discovery); *Kean v. Van Dyken*, 2006 WL 374502, *5 (W.D. Mich. 2006) ("After all, the entire tenor of Fed.R.Civ.P. 45 is to prohibit a party from simply shifting his significant litigation expenses to a non-party...."); *Nova Biomedical Corp. v. i-STAT Corp.*, 182 F.R.D. 419 (D.C. N.Y. 1988) (subpoenas on non-party were overbroad and could be quashed); *Broussard v. Lemons*, 186 F.R.D. 396, 398 (W.D. La. 1999) ("Courts addressing the issue of how the costs of subpoena compliance should be allocated have consistently emphasized that non-parties who have no interest in the litigation should not be required to subsidize the costs of the litigation.").

10.   **Privilege**.   While plaintiffs should seek the vast majority of the subpoenaed documents from the party that would have them -- Live Nation -- the remaining documents of

Palace Sports that Live Nation would not have are also objectionable on multiple other grounds. For starters, documents internal to Palace Sports, such as those relating to negotiating strategy, would be rife with privileged documents. The Court must quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed.R.Civ.P. 45(c)(3)(A)(iii). Attorneys for Palace Sports are routinely involved in negotiations with Live Nation and others, including event-by-event and artist-by-artist. The document-by-document separation of privileged from non-privileged magnifies the expense and burden of the search, compilation, analysis, segregation, redaction, preparation of privilege logs, and production. The Subpoena literally would encompass thousands of documents, many within the attorney-client privilege, imposing an unduly expensive and time-consuming undue burden on a non-party.

11.   **Confidential Commercial Information**.   Similarly, many of the documents, certainly those that Live Nation does not have, contain confidential and competitively sensitive commercial information and trade secrets. Confidentiality should be no surprise given the nature of the documents sought, e.g., negotiations over highly competitive issues such as the terms whereby a particular artist agrees to perform, pricing, agreements with promoters, revenue splits, etc. Many of the agreements sought have confidentiality provisions that would be breached by production.   Obviously, Palace Sports should not be required to disclose its confidential information such as its negotiating strategies, and disclosure would obviously undermine future negotiations with Live Nation, which would enjoy a competitive advantage in those negotiations. Similarly, the internal confidential information of Palace Sports would give plaintiffs a competitive advantage in their operation of their Baltimore concert venue and promotion

7

activities, including in their negotiations of pricing and other terms, whether with Live Nation, artists, other promoters, national tours, or otherwise.

12.     A motion to quash may be granted when a subpoena requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed.R.Civ.P. 45(c)(3)(B)(i).  In assessing this consideration, "special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation." *Travelers Indemnity Co. v. Metropolitan Life Insurance Co.*, 228 F.R.D. 111, 113 (D.Conn. 2005).  In *Everco Industries, Inc. v. OEM Products Co.*, 362 F.Supp. 204, 206 (N.D. Ill. 1973), the district court held that routinely requiring broad disclosure of confidential business documents was inappropriate even for parties:

> [I]t is important to remember that the Plaintiff and Defendant are competitors.  By the very nature of the parties' business relationship, there are certain documents which are confidential and should not be discovered without sufficient cause....
>
> The Defendant's requests for <u>carte blanche</u> production of all contracts and communications between Plaintiff and certain other companies is not a properly defined request for production given the potentially confidential nature of many of the documents....The Defendant has not demonstrated to this Court the materiality and relevancy of such open-ended discovery.

*Id.* at 206 (internal citations omitted).

13.     The usual standard protective order is insufficient protection, particularly here where Palace Sports is not a party to the litigation, is not in a position to monitor hereafter how its documents are used or misused, would not even know of use or misuse following production, would have to go to the court in Maryland to seek enforcement, and is not adequately protected by some after-the-fact sanction following misuse of its information.  Here, plaintiffs exhibit their casual disregard of obligations under the Maryland Protective Order, and its unreliability as protection for Palace Sports documents.  Palace Sports on its own had to find out about the

existence of a Protective Order in the Maryland case, because plaintiffs violated its Paragraph 9 requirement that "If a party serves any subpoena duces tecum upon a non-party in this action, that party shall serve a copy of this Order simultaneously with the subpoena duces tecum." Plaintiffs did not provide the Protective Order until 2 weeks after the subpoena was served, after counsel's December 13, 2010 concurrence call.  Non-party Palace Sports cannot rely upon the parties to honor the confidentiality of Palace Sports' documents.

> "Non-party organizations are limited in their ability to control the manner in which parties use their confidential commercial documents. When non-parties are forced to produce commercial documents pursuant to a discovery request, they are in effect handing over the keys to their corporate automobiles to parties who may, at best, be considered ambivalent towards their interests."

*In re Northshore University Healthsystem*, 254 F.R.D. 338, 343 (N.D. Ill. 2008).

14.     **Irrelevant & Overbroad**.  A subpoena imposes an undue burden on a party when a subpoena is overbroad; in that instance, it is properly quashed.  *In re Subpoena Duces Tecum to AOL, LLC*, 550 F.Supp.2d 606 (E.D. Va. 2008); (the court affirmed the quashing of a subpoena that requested documents and communication from a non-party that were not relevant to the parties or subject matter of the underlying litigation).

15.     Here, the Subpoena is vastly overbroad.  Relations between Palace Sports and Live Nation have little to do with plaintiffs, who are not similarly situated to Palace Sports. Plaintiffs operate a single outdoor and thus seasonal venue, with a seating capacity of 19,316, that can be filled by only a handful of artist tours per year, in a market where Live Nation owns a competing venue (the Nissan Pavilion).  By contrast, Palace Sports operates multiple venues, of varying sizes and characteristics, outdoor and seasonal, indoor and year-round, able to host a full line-up of artists, and able to negotiate for the promoter's full stable of talent.  Much of Palace Sports' negotiations and agreements with Live Nation encompass multiple venues and artists. DTE Energy is the only outdoor amphitheatre of its size in Metro Detroit, and any artist who

9

wants to play in a large outdoor amphitheatre in Metro Detroit will play DTE Energy, regardless of who is doing the promoting.

16.     Live Nation does not own or control any concert venue in Metro Detroit competitive with Palace Sports venues, and is not the exclusive promoter at any Palace Sports venue.  Palace Sports hosts many concerts that do not involve Live Nation.  Indeed, only about 40% of concerts at DTE Energy Music Theatre involve Live Nation.  Live Nation also promotes artists to play other venues competitive with Palace Sports, including Joe Louis Arena, Cobo Hall, Comerica Park, Ford Field, Fox Theatre, Chene Park, Crisler Arena, and Freedom Hill.

17.     Live Nation is better positioned as a litigant to address the scope of relevance, and has objected in the Maryland case to discovery outside the Maryland market, but Palace Sports and the Metro Detroit market are simply irrelevant to the crux of plaintiffs' allegations, e.g., that Live Nation wields its "power to entice and coerce artists to appear only at amphitheatres and other venues it owns, operates or at which it controls the booking" (Complaint ¶3), "Live Nation acquired the most prestigious, the only or a monopoly over the amphitheatres or venues with similar seating capacities in a metropolitan or regional market" (Complaint ¶76), "Live Nation also insists that artists it promotes appear only at its venues in order to deny competing venue owners and operators of access to artists" (Complaint ¶83), "Live Nation generally refuses to permit artists it promotes to appear at venues at which it does not control the bookings" (Complaint ¶84), Live Nation controls "ninety percent (90%) of the amphitheatres in the United States" (Complaint ¶104), and "Live Nation required artists to appear only at Live Nation venues" (Complaint ¶121).  In other markets, those allegations may or may not be true, but the Metro Detroit market is different, including who owns and controls the venues.

10

18.    Even if plaintiffs had a theory for the relevance of the artist agreements and other agreements that Live Nation negotiated with Palace Sports, those documents are obtainable from Live Nation as discussed above, and there is no conceivable relevance to the remaining documents that are internal to Palace Sports, such as the internal negotiating emails and other internal documents sought.

19.    **Fishing Expedition**.    Clearly, plaintiffs are simply on a "fishing expedition" which is not a proper use of discovery.    Indeed, during the December 13, 2010 telephone conference on concurrence, plaintiffs' counsel was asked why she needed the subpoenaed documents that Live Nation did not have, and refused to respond except to state: "I am not required to tell you what I am looking for."    This Court has made clear that "an overly broad request for discovery which constitutes no more than a fishing expedition will not be allowed." *Isaac v. Shell Oil Co.*, 83 F.R.D. 428, 431 (E.D. Mich. 1979).    *See also United States v. Markwood*, 48 F.3d 969, 982 (6th Cir. 1995) (noting that the Federal Rules of Civil Procedure do not grant a party the right to unlimited discovery).    *See also* 6 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 26.41(2)(a) (3d ed. 2005).

20.    **Undue Burden & Expense**.    As explained, compliance with the Subpoena imposes on the non-party Palace Sports undue burden and expense, which is a "must quash" situation under Fed.R.Civ.P. 45(c)(3)(A).    See also *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003) (subpoena should be quashed where, even if the requested documents were relevant, the subpoena was unduly burdensome to the nonparty, when it encompassed a decade's worth of materials, and was not probative of whether the defendant was liable); *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) (a court has no duty to modify subpoena, and may simply quash a subpoena that subjects a person to undue burden).

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE·SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

11

Even as to parties, the court should limit the extent of discovery otherwise allowed if the burden or expense outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(C)(iii). *See also* Fed.R.Civ.P. 26(c)(1) (courts can limit discovery "to protect a party" from "undue burden or expense"); *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) ("district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

      21.    The Subpoena seeks a massive and expensive search for every document and piece of electronic data that exists, relating in any way to Live Nation and any artist's performance at DTE Music Energy Theatre since January 1, 2004, followed by compilation, segregation, redaction, logging, and production. Given the way that Palace Sports is organized, this would require personnel and files from an array of departments including marketing, production, events, talent buying, box office, food and beverage, merchandising, accounting, security, and guest services. Multiple people at Palace Sports deal with multiple people at Live Nation, generating emails daily. A single artist's contract could be 50-100 pages long, and all documents for a single event could be hundreds of pages, maybe thousands for some events. In the seven-year period covered by the subpoena, Palace Sports has hosted hundreds maybe thousands of events, around 60-70 annually at DTE Energy Music Theatre alone. Documents of Palace Sports are in multiple departments, not easily separated by venues, so that the burdensome search for subpoenaed documents about DTE Energy Music Theatre cannot just focus on files or document repositories limited to DTE Energy Music Theatre. That is simply not how the records of Palace Sports are maintained. Obviously, the number varies annually by venue, and emails would be increasingly unavailable with the passage of time, but this accurately

illustrates the massiveness of the search to be undertaken, which could take dozens and dozens if not hundreds of hours.

22. **Electronic Search**.  In addition, compliance with the Subpoena presents the usual burdensomeness and expense of e-discovery, that may be understandable for party, but is unduly burdensome for a non-party like Palace Sports.  The Subpoena on its face requires electronic data, yet gives no search words or other guidance to limit or frame the electronic search to ensure responsiveness and avoid argument on whether any particular search was sufficient.

23. **Insufficient Available Resources**.   Personnel of Palace Sports are consumed with other matters, including the usual indoor concert season, the Detroit Pistons season, and the well-publicized potential transactions to sell Palace Sports and the Detroit Pistons, so there simply are not resources available to engage in this massive, expensive undertaking of compliance with the Subpoena.  Simply stated, current personnel are swamped.

24. **Insufficient Time**.  Palace Sports also objects that compliance with the Subpoena cannot be accomplished within the scheduled timeframe.  Plaintiffs in their Subpoena gave the minimum time for production, essentially two weeks to conduct the massive search for, compilation of, and production of documents.  That is alone a "must quash" ground under Rule 45(c)(3)(A) ("fails to allow a reasonable time to comply").  *See also Thomas v. IEM, Inc.*, 2008 WL 695230, *3 (M.D. La. 2008) (where the court held that 15 days was "a clearly inadequate amount of time to conduct the extensive search" required by a subpoena).  During the December 13, 2010 telephone call among counsel regarding concurrence in this motion, plaintiffs' counsel declined to grant an extension, stating only that an extension would be "considered" which was insufficient since a motion had to be filed the next day in order to be timely.

25.   **Award Fees & Costs**.  Plaintiffs should be required to pay the costs associated with their discovery requests, including Palace Sports' attorney fees and costs, compensation for employee and attorney time in reviewing files, collecting documents, segregating and redacting privileged and other objectionable documents, and producing any documents ultimately produced.  Under Rule 45(c)(1), if the issuing party or attorney fails to take reasonable steps to avoid imposing an undue burden and expense on the non-person subject to a subpoena, "The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed.R.Civ.P. 45(c)(1).  See also *Builders Ass'n of Greater Chicago v. City of Chicago*, 2002 WL 1008455 (D.C.Ill.2002) (attorneys' fees under Rule 45(c)(1) were justified based on the high burden imposed on the non-party subpoena recipient); *Spears v. City of Indianapolis*, 74 F.3d 153 (7th Cir. 1996) (the party requesting documents was required to bear the cost of the production where extensive materials were sought giving the impression of a fishing expedition, and many of the documents sought were privileged); *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329 (D.C.Cal.1995) (the issuer of a subpoena was required to pay a nonparty at an hourly rate for the time spent by in-house legal staff in document production, as well as for time spent by employees, because the time could otherwise have been used to further the nonparty's usual business).  Also, under Rule 26(c)(3), expenses may be awarded under Rule 37(a)(5), which provides that upon granting a protective order the Court must require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  "[T]he court is able to condition denial of the motion to quash or modify upon

14

the person who requested the subpoena advancing the reasonable cost of producing the material sought." Wright & Miller, *Federal Practice & Procedure* §2459 pp. 456-457.

## D. RELIEF REQUESTED

Accordingly, non-party Palace Sports & Entertainment, Inc. requests that its objections be sustained and that plaintiffs' Subpoena be quashed, along with such other relief as is just, with costs including attorney fees assessed against plaintiffs.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: _____
Dennis M. Haffey (P26378)
Kerry K. Cahill (P67671)
Attorneys for Palace Sports
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
(248) 203-0813
dhaffey@dykema.com

Dated:  December 14, 2010

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that a copy of the *Non-Party Objections & Motion to Quash Subpoena* and this *Proof of Service* were served upon:  Abby L. Sacunas, Cozen O'Connor, 1900 Market Street, Philadelphia, Pennsylvania and Franklin M. Rubinstein, Wilson Sonsini Goodrich & Rosatti, P.C. 1700 K. Street, N.W., Washington, D.C. 20006 via first class mail.

Dated:  December 14, 2010

_Diane G. Kelley_
Diane G. Kelley

16

## INDEX OF EXHIBITS

Exhibit 1      Subpoena

Exhibit 2      Affidavit of Susan L. Greenfield

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•39577 WOODWARD AVENUE•SUITE 300•BLOOMFIELD HILLS, MICHIGAN 48304

# EXHIBIT 1

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

| | |
|---|---|
| IT'S MY PARTY, INC., et al. | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   1:09-cv-00547-JFM |
| LIVE NATION, INC. | ) |
| | )   (If the action is pending in another district, state where: |
| *Defendant* | )     District of Maryland              ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Custodian of Records, DTE Energy Music Theatre c/o Palace Sports & Entertainment
      6 Championship Drive, Auburn Hills, Michigan 48326

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Exhibit A.

| Place: TS Glenfield and Associates | Date and Time: |
|---|---|
| 4656 Desert Bridge Court | |
| Highland, Michigan 48356 | 12/15/2010 1:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  ___11/30/2010___

          *CLERK OF COURT*

                                                              OR   _____
          _____                              *Attorney's signature*
          *Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  IT'S MY PARTY, INC. and
IT'S MY AMPHITHEATRE, INC. d/b/a _____, who issues or requests this subpoena, are:
Abby Sacunas, Esq.
COZEN O'CONNOR
1900 Market Street, Philadelphia, PA 19103; (215) 665-4785; asacunas@cozen.com

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT A TO SUBPOENA DUCES TECUM ADDRESSED TO**
**Custodian of Records DTE ENERGY MUSIC THEATER c/o**
**PALACE SPORTS & ENTERTAINMENT**
**(6 CHAMPIONSHIP DRIVE, AUBURN HILLS, MICHIGAN 48326)**

For the purposes of interpreting and responding to this Subpoena, the following

instructions and definitions shall apply:

## INSTRUCTIONS AND DEFINITIONS

1.      Scope.  You should produce all documents within your possession, custody or

control, or in the possession, custody or control of your counsel or any other person or entity

acting or purporting to act in concert with you or on your behalf, wherever located.

2.      Unless the text clearly requires otherwise, you shall interpret:

      a.      The singular form of a word to include the plural and vice versa;

      b.      The conjunctive "and" to include the disjunctive "or" and vice versa;

      c.      All pronouns to apply to the male, female and neuter genders;

      d.      The word "any" to include the word "all" and vice versa; and

      e.      The past tense of a word to include the present tense and vice versa.

3.      Ambiguous terms.  If you encounter any ambiguity in construing a definition or

instruction relevant to answering the enclosed request for production of documents, set forth the

matter deemed "ambiguous" and set forth the construction chosen or used in submitting

documents.

4.      Objections.  To the extent that you object, in whole or in part, to any request,

please set forth the grounds for your objection.  If you object in part to any request, respond to

the remainder of the request completely.  If any requested documents are withheld:

      a.      Describe generally the document withheld;

      b.      State the date of the creation of the document;

c.      State the ground being relied upon; and

d.      Identify all persons and entities who have access to the document.

5.      <u>Continuing Obligations.</u>  These requests are intended and shall be deemed to be continuing.  If you are unable to produce a document requested at this time, but subsequently acquire it, it is to be supplied immediately in accordance with the applicable Rules of Civil Procedure.

6.      Unless otherwise stated, the applicable time period covered by these requests is from January 1, 2004 through the present.

7.      As used herein, the term "document" shall have the broad meaning ascribed to it by Federal Rule of Civil Procedure 34, including, but not limited to, the original and all nonidentical copies of any written, typed, printed, photocopied, photographic, computer generated, stored or transmitted communication or information, machine-readable, or magnetically or optically recorded matter of any kind, including, but not limited to, letters, envelopes, forms, affidavits, correspondence, e-mail messages, telegraphs, telecopies, facsimiles, paper communications, electronic communications, signed statements, tabulations, charts, memoranda, checks, appointment books, records, proposals, memoranda or other transcriptions by mechanical device, by longhand or shorthand recording, tape recorded materials, materials recorded by any electronic means, computer generated information, computer software, computer files, computer disks, computer tapes, intraoffice communications, interoffice communications, all summaries of oral communications, telephonic or otherwise, microfiche, microfilm, lists, bulletins, calendars, circulars, desk pads, opinions, ledgers, minutes, agreements, journals, diaries, contracts, invoices, balance sheets, telephone messages or other messages, magazines, pamphlets, articles, notices, newspapers, studies, summaries, worksheets, telexes,

cables and all other graphic materials, writings and instruments, however produced or reproduced. Finally, a "document" includes both the "document" and anything appended thereto.

8.      As used herein, "Live Nation" shall mean and refer to Live Nation, Inc., and all predecessors (including but not limited to, Clear Channel Entertainment), successors, parent corporations, subsidiaries, affiliates, divisions, present and former officers, directors, employees, agents, representatives, brokers, attorneys, and accountants, and any and all persons or entities acting on or purporting to act on its behalf or under its direction or control. In answering each request, "Live Nation" shall be inclusive rather than exclusive.

## DOCUMENT REQUESTS

Pursuant to Federal Rule of Civil Procedure 45(a)(1)(c), you are directed to produce all documents in your possession, custody or control responsive to the following requests:

1.      Each and every contract, memorandum of understanding, term sheet, deal sheet, confirmatory email or correspondence or other agreement, for Live Nation, including any current or former Live Nation employee, subsidiary or affiliate, to promote, co-promote, book, produce or sponsor any artist's performance at DTE Energy Music Theatre, anytime between January 1, 2004 and the present.

2.      All documents generated during or reporting upon negotiations for Live Nation, including any current or former Live Nation employee, subsidiary or affiliate, to promote, co-promote, book, produce or sponsor any artist's performance at DTE Energy Music Theatre, anytime between January 1, 2004 and the present.

3.      Each and every contract, memorandum of understanding, term sheet, deal sheet, confirmatory email or correspondence or other agreement, for Live Nation, including any Live

Nation current or former employee, subsidiary or affiliate to receive a co-promotion or other fee for the performance of any artist(s) at DTE Energy Music Theatre, anytime between January 1, 2004 and the present.

4.      All documents generated during or reporting upon negotiations for Live Nation, including any Live Nation current or former employee, subsidiary or affiliate to receive a co-promotion or other fee for the performance of any artist(s) at DTE Energy Music Theatre, anytime between January 1, 2004 and the present.

5.      All documents generated during or reporting upon any discussions, negotiations, or offers to or from Live Nation to purchase, lease or enter into any joint venture or other type of business arrangement relating to the operation of the venue presently known as DTE Energy Music Theatre.

# EXHIBIT 2

**AFFIDAVIT**

Susan L. Greenfield, being sworn, states that she is the General Counsel for Palace Sports & Entertainment, Inc. ("Palace Sports") and has held that position for a longer duration than the seven years encompassed by the Subpoena served by plaintiffs' counsel; that she is generally familiar with the operations, market, and record-keeping of Palace Sports; that she is generally familiar with the negotiations and agreements between Palace Sports and Live Nation; that she has reviewed the personnel and resources that would be necessary to locate, analyze, segregate, redact, and produce the subpoenaed documents; that she participated in the December 13, 2010 telephone call among counsel regarding concurrence in this motion; that the facts stated in Paragraphs 1, 3-4, 7-8, 10-11, 13, 15-16, 20, and 23-24 of the preceding Brief are true; and that she is competent to testify to the foregoing based on her personal knowledge.

Susan L. Greenfield
General Counsel

The foregoing was acknowledged before me
this 14th day of December, 2010.

Notary Public
State of Michigan, County of ~~Oakland~~ Macomb
My Commission Expires: 3-16-2012
Acting In Oakland County

BH01\1259548.2
ID\DMH - 083570/0999

19