UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

| | |
|---|---|
| IT'S MY PARTY, INC. and<br>IT'S MY AMPHITHEATRE, INC.<br><br>        Plaintiffs,<br>    v.<br><br>LIVE NATION, INC.<br><br>        Defendant. | Civil Action NO. 2:10-mc-51358<br>(Pending in the District of Michigan)<br><br>Hon. George Caram Steeh<br>Magistrate Virginia M. Morgan<br><br>Civil Action No. 1:09-cv-00547-JFM<br>(Pending in the District of Maryland<br>Northern Division) |

**PLAINTIFFS' OPPOSITION TO NON-PARTY'S OBJECTIONS AND
MOTION TO QUASH SUBPOENA**

Plaintiffs, It's My Party, Inc. and It's My Amphitheatre, Inc. ("Plaintiffs"), hereby oppose

non-party, Palace Sports & Entertainment, Inc.'s (hereafter "Palace Sports"), objections and

motion to quash the subpoena ("Subpoena") served upon it pursuant to Federal Rule 45.

Plaintiffs seek an Order overruling the objections and denying the motion to Quash.  The

Subpoena seeks documents from Palace Sports which are critical to the claims asserted by

Plaintiffs in the underlying antitrust litigation captioned It's My Party, Inc. et al v. Live Nation,

Inc., Case No. 1:09-cv-00547-JFM, pending in the U.S. District Court for the District of

Maryland ("Underlying Litigation"), that in large part, have not and cannot be obtained from

Live Nation.

**BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO NON-PARTY'S
OBJECTIONS AND MOTION TO QUASH SUBPOENA**

**ISSUE PRESENTED**

Should this Court overrule Palace Sports & Entertainment, Inc.'s objections and deny its motion to quash the narrowly tailored Subpoena served upon it which seeks just five categories of documents relevant and necessary to plaintiffs' claims in the Underlying Litigation, that only can be obtained from the non-party, particularly when any responsive confidential information would be protected by the existing Protective Order governing the Underlying Litigation?

**SUGGESTED ANSWER**

Yes.

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Page(s)**

CASES

EEOC v. Ford Motor Credit Co.,
 26 F.3d 44 (6th Cir. 1994)) ............................................................................................7

Englar v. 41B District Court,
 No. 04-CV-73977, 2009 U.S. Dist. LEXIS 100949 (E.D. Mich. Oct. 29, 2009) ...................7

Flanagan v. Wyndham Int'l, Inc.,
 231 F.R.D. 98 (D.D.C. 2005)........................................................................................7

Ghandi v. Police Dep't of the City of Detroit,
 74 F.R.D. 115 (E.D. Mich. 1977) ................................................................................18

Gotham Holdings, LP v. Health Grades, Inc.,
 580 F.3d 664 (7th Cir. 2009) ......................................................................................15

Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.,
 91 F.R.D. 84 (E.D.N.Y. 1981) ....................................................................................14

In re Honeywell Int'l, Inc. Sec. Litig.,
 230 F.R.D. 293 (S.D.N.Y. 2003) .................................................................................11

In re Smirman,
 267 F.R.D. 221 (E.D. Mich. 2010) ...............................................................................7

Ireh v. Nassau Univ. Med. Ctr.,
 No. Civ. A. 06-09, 2008 U.S. Dist. LEXIS 76583 (E.D.N.Y. Sept. 17, 2008)........................12

Ispat Inland, Inc. v. Kemper Envtl., Ltd.,
 No. 06-60, 2007 U.S. Dist. LEXIS 16718 (D.C. Minn. March 8, 2007) ................................16

Koch v. Greenberg,
 No. 07-9600, 2009 U.S. Dist. LEXIS 61913 (S.D.N.Y. July 14, 2009) ................................12

Laethem Equip. Co. v. Deere and Co.,
 No. 05-CV-10113, 2007 WL 2873981 (E.D. Mich. Sept. 24, 2007)................................10, 16

Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,
 914 F. Supp. 1172 (E.D. Pa. 1996) ..............................................................................16

Nobody In Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.,
 311 F. Supp. 2d 1048 (D. Colo. 2004)...........................................................................11

Olympic Refining Co. v. Carter,
 332 F.2d 260 (9th Cir. 1964) ......................................................................................12

People v. Rezek,
103 N.E.2d 127 (Ill. 1951))........................................................................17

RLI Ins. Co. v. Commericial Money Center, Inc.,
Nos. CIV.02CV192BTM(AJB), CIV.02CV199BTM(AJB),
CIV.02CV218BTM(AJB), CIV.02CV308BTM(AJB), CIV.02CV589BTM(AJB) and
CIV02CV1438BTM(AJB), 2002 WL 32081854 (August 16, 2002 S.D.Cal.).......................14

Simon Prop. Group, Inc. v. Taubman Centers, Inc.,
No. 07-X-51024, 2008 U.S. Dist. LEXIS 5065 (E.D. Mich. Jan. 24, 2008) ....................14, 15

Software Rights Archive, LLC v. Google, Inc.,
No. Civ. A. 08-03172, 2009 U.S. Dist. LEXIS 43835 (D. Del. May 21, 2009).....................12

Tequila Centinela v. Bacardi & Co. Ltd.,
242 F.R.D. 1 (D.D.C. 2007)........................................................................11

Truswal Sys. Corp. v. Hydro-Air Eng'r, Inc.,
813 F.2d 1207 (Fed. Cir. 1987)....................................................................11

United States. v. Davis,
702 F.2d 418 (2d Cir.1983).........................................................................14

United States v. Griffith,
334 U.S. 100 (1948)...............................................................................11

Verizon Commc'ns Inc. v. Law Offices of Curtis & Trinko,
540 U.S. 398 (2004)...............................................................................11

Viacom Int'l, Inc. v. YouTube, Inc.,
No. Civ. A. 08-80129, 2008 U.S. Dist. LEXIS 79777 (N.D. Cal. Aug. 18, 2008)............12, 13

Visto Corp. v. Smartner Info. Sys., Ltd., Nos. Civ. A. 06-80339, 06-80352, 2007 WL
218771, at *3 (N.D. Cal. Jan. 29, 2007))........................................................13, 14

Zoom Imaging, L.P. v. St. Luke's Hosp. and Health Network,
513 F.Supp.2d 411 (E.D.Pa. 2007).................................................................14

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 26 ..............................................................10, 11

Federal Rule of Civil Procedure 45 .............................................................5, 7, 16

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT IN OPPOSITION ................................................ 1

II.   STATEMENT OF RELEVANT FACTS ............................................................ 3

    A.   Plaintiffs' Claims Against Live Nation ("Underlying Litigation") ..................... 3

    B.   Status of Discovery in the Underlying Litigation ....................................... 5

    C.   Plaintiffs Serve Palace Sports With a Subpoena ....................................... 5

III.  COUNTER-STATEMENT OF RULE 45 STANDARD FOR MOTION
    TO QUASH ........................................................................................ 7

IV.   PALACE SPORTS FAILED TO ESTABLISH SUFFICIENT GROUNDS
    FOR THIS COURT TO QUASH THE PLAINTIFFS' SUBPOENA ........................... 8

    A.   Palace Sports' Characterization Of Its Attempt To Seek Concurrence
    In The Relief Sought is Misleading and Ignores Material Facts that
    Moot its Objections ........................................................................... 8

    B.   The Subpoena Seeks Highly Probative Information ................................... 10

    C.   The Argument that Plaintiffs Must Exhaust Discovery With Live Nation is
    Without Merit ................................................................................. 12

    D.   A Confidentiality Order Has Been Entered That Adequately Protects Palace
    Sports' Confidential And Proprietary Business Concerns .......................... 14

    E.   Palace Sports' Claims Of Undue Burden and Privilege Were Not Asserted
    With Required Specificity ................................................................... 15

    F.   Palace Sports Has Not Adequately Described Its Burden To Produce
    Documents And It Is Premature For This Court To Award Fees & Costs
    To Palace Sports For The Production Of Responsive Documents ................. 17

V.    CONCLUSION ..................................................................................... 18

## I.   PRELIMINARY STATEMENT IN OPPOSITION

Palace Sports' representation that "there was a conference among the attorneys for the parties and Palace Sports in which the nature of the motion and its legal basis was explained and concurrence in the relief sought was requested of plaintiffs' counsel but could not be obtained" is misleading.  As is discussed in further detail below, Palace Sports never responded to the subpoena prior to that teleconference, never served or advised of its objections, but instead utilized Live Nation's counsel to schedule what was understood to be an amicable conference to discuss a coordinated response to the subpoena.  What occurred instead was an ambush, during which previously un-introduced outside counsel for Palace Sports, Dennis Haffey, made no effort to explain the legal or factual basis for his blanket objections to the subpoena or come to an amicable resolution of his client's concerns, ignored Plaintiffs' offers to narrow the scope of the subpoena and extend the time to respond, insisting instead that Plaintiffs withdraw their subpoena in its entirety.

The documents demanded in the Subpoena served upon Palace Sports are critical to Plaintiffs' claims.  Central claims in the Plaintiffs' antitrust Complaint against Live Nation are that Live Nation offers supra-competitive fees to artists (often exceeding the entire concert gross) to induce them to participate in Live Nation promoted national, block-booked or multi-appearance concert tours provided that the artist agrees to appear at venues, particularly large capacity amphitheatres, that Live Nation owns, leases, manages or with which it has a booking agreement, and only permits artists to appear in independent third-party venues in those regions in which it does not have any relationship with a venue.  Even then, Plaintiffs allege that artists' appearances in those third-party venues are contingent upon either the venue or the artist paying Live Nation a concession for the right to appear there.  By Palace Sports' general counsel's own account, DTE Energy Music Theatre ("DTE") is the only large outdoor amphitheatre in the

Metropolitan Detroit area. According to Live Nation's public filings and responses to discovery in the Underlying Litigation, Live Nation does not own, operate or control DTE, however it recently identified DTE as a third-party venue with which is has an "exclusive booking agreement," without further explanation. In order to accurately assess Live Nation's degree of control over the Detroit Metropolitan Area, it is imperative for Plaintiffs to determine the terms of the business arrangement and fees Live Nation exacts from Palace Sports for permitting Live Nation artists to appear at DTE.

Even though Palace Sports, through its operation of DTE, possesses highly relevant information, it refused to produce **any** responsive documents and demanded the subpoena be withdrawn before ever advising Plaintiffs counsel of its objections, or serving a written response. Palace Sports does not contend it does not possess responsive documents. It argues that Plaintiffs must first obtain documents from Live Nation and that it would be unduly burdensome to comply with the Subpoena. However, Plaintiffs are not required to delay third-party discovery until Live Nation produces all responsive documents, particularly in that the Subpoena seeks documents from DTE that, by definition, are unavailable from Live Nation. For instance, Plaintiffs primarily seek the details of the agreements permitting Live Nation to book its artists at DTE, together with DTE's internal communications regarding negotiations with Live Nation for concert performances. However, to the extent a master, overarching agreement between Live Nation and Palace Sports exists that details Live Nation's control, financial interest in, and/or revenue shared for concerts it places at DTE, there would not appear to be responsive documents relating to negotiations for each individual artists' appearance. Further, although DTE operates multiple concert venues, the Subpoena exclusively applies to DTE. Given the limited scope and period of time covered by the Subpoena, compliance should not be unduly cumbersome. This is especially true in that Plaintiffs repeatedly offered, and remain willing to narrow the scope of the

Subpoena to, for instance, require the search of only those individuals' computers and documents who are responsible for negotiating with Live Nation for the booking of DTE, and even offered to extend the deadline to permit Palace Sports to conduct the search for responsive documents. Plaintiffs' offers were flatly ignored, and the instant motion filed, which only reiterates DTE's blanket objections and unreasonable demand that the Subpoena be withdrawn. For the reasons set forth herein, Palace Sports' Objections and Motion to Quash Subpoena is without merit, and should be denied.

## II.      STATEMENT OF RELEVANT FACTS

### A.  Plaintiffs' Claims Against Live Nation ("Underlying Litigation")

Over the last decade, Live Nation has, by its own admission, sought to gain control over the entire interface between major popular music artists and their fans. It first acquired monopoly power in the national market for promoting live popular music concerts by major artists by, *inter alia*, acquiring local or regional promotional firms, and (while owned by Clear Channel Communications) refusing to provide radio airplay to artists, and to advertise concerts, promoted by rivals. Live Nation sought to expand its market power to the market for providing venue services to artists. It acquired, leased and/or entered into management or exclusive booking arrangements with numerous music concert venues throughout the United States. At the present time, Live Nation controls through ownership, lease, management agreement or exclusive booking arrangement at least 111 music venues nationwide, including 40 out of the 48 amphitheatres in the country with a seating capacity that exceeds 15,000, and the only, or a monopoly of, amphitheatres in 18 of the 25 largest markets in the country.

As Live Nation expanded its national footprint, Live Nation made offers to popular music artists to promote their tours on a national, block-booked or multi-appearance basis. To induce the artist to participate in national tour deals, Live Nation offered supra competitive performance fees, including fees exceeding the entire amount the concert tour was expected to earn through

ticket sales. Live Nation will only promote an artist on a national, block-booked or multi-appearance basis if the artist only appears at the venues it controls. It does so to consolidate its control of venues throughout the country. It also requires that artists appear at venues it controls in order to receive the parking fees, concession fees and other ancillary revenue generated at the concert venue, or through relationships with the concert venue, in order to offset the losses it incurs in promoting the concert. Once it gained market power in the market for providing venue services to artists, Live Nation began requiring artists to appear at venues in geographic markets where it faces competition from a similarly situated venue in order to appear at venues in areas, like Detroit, where it appears to control the only or a monopoly of facilities utilized for outdoor music concerts.

Plaintiffs have been adversely affected by this conduct. I.M.P is the vehicle through which Seth Hurwitz, a noted promoter in the Washington, D.C. and Baltimore areas, promotes concerts. Mr. Hurwitz has promoted countless major popular music artists, including Nickelback, Gwen Stefani, Nine Inch Nails, Maroon 5, Counting Crows and Coldplay, often establishing a relationship with the artist early in their careers. Mr. Hurwitz also operates I.M.A., which manages the Merriweather Post Pavilion ("Merriweather"). Merriweather is located about sixty-eight miles from Live Nation's Jiffy Lube Live Amphitheatre (formerly, "Nissan Pavilion") and competes with it in the Baltimore/Washington D.C. metropolitan areas. Live Nation's tying artists' use of its promotional services to their appearing at Live Nation controlled venues and using its control over venues in an area of the country in which it operates the only or a monopoly of the available music venues to coerce artists to appear at other venues where it faces competition has denied I.M.P. and I.M.A. the ability to compete for artists and, therefore, fans. Plaintiffs have been precluded from fairly competing for artists, and many artists

who previously utilized I.M.P.'s promotional services and/or who appeared at Merriweather, no longer do so.

**B.      Status of Discovery in the Underlying Litigation**

Plaintiffs and Live Nation have exchanged volumes of documents, and served and responded to interrogatories, and Live Nation has advised that no additional responsive documents are forthcoming.[1]  Plaintiffs have also served several third-party venues, artist agencies and individuals with subpoenas to produce relevant documents, and the parties are presently in the process of scheduling depositions.  The close of discovery in the Underlying Litigation is March 31, 2011.

**C.      Plaintiffs Serve Palace Sports With a Subpoena**

Plaintiffs served the Subpoena on Palace Sports on December 1, 2010 (a copy of the Subpoena was marked as Exhibit 1 and attached to Palace Sports' Brief).  Palace Sports is the owner and operator of DTE, an outdoor amphitheatre located in the Metropolitan Detroit market, and one of only 4 third-party amphitheatres with which Live Nation claims it has an exclusive booking agreement.  Despite Palace Sports' argument that it operates multiple venues in the Metropolitan Detroit market and engages in negotiations and agreements with Live Nation across its multiple venues, Plaintiffs are interested only in its agreements and negotiations with Live Nation with respect to or involving DTE.  Requests 1 through 4 of the Subpoena are narrowly tailored to encompass categories of documents that reflect the agreements, negotiations and internal communications (both with Live Nation and artists' agents) solely related to artists' performances at DTE that were promoted, co-promoted, booked, produced, or sponsored by Live Nation, or for which Live Nation received a fee from DTE, between January 1, 2004 and the present.  Request 5 of the Subpoena seeks a very specific set of documents related to any

---

[1] Plaintiffs have nevertheless demanded the production of at least the agreements Live Nation has with third-party venues, including DTE, and as of the date of this filing, Live Nation has yet to respond.

discussions, negotiations, or offers from Live Nation to purchase, lease, or enter into any joint venture or other type of business relationship related to the operation of DTE.

Palace Sports, as owner of the only outdoor amphitheatre of its size in its market, is in a unique position to provide evidence for Plaintiffs' claims. It concedes, "any artist who wants to play in a large outdoor amphitheatre in Metro Detroit will play DTE Energy, regardless of who is doing the promoting."[2] (Palace Sports' Br. at ¶ 15.) Thus, Palace Sports holds valuable information regarding how Live Nation operates with respect to venues it does not control and how it uses its national promotional market power in negotiations with such third-party venues. Additionally, any documents related to an attempt by Live Nation to acquire control over DTE are pertinent to Plaintiffs' claims that Live Nation "will deny [venue owners] access to Live Nation artists if they do not grant it exclusive booking rights" (Complaint at ¶ 88), or will "induce artists to force competing promoters or venues to pay a percentage of their profits from the artist's concert to Live Nation even though it, at most, has minimal involvement with the concert" (Complaint at ¶ 90). (A true copy of the Complaint is attached hereto as Exhibit A.) Plaintiffs further assert that Live Nation's dominance is global, and is not limited to one geographic area.

---

[2] Notably, there are a limited number of artists who can support an appearance at a venue the size of DTE. Palace's use of the term "any artist" must be construed as "any *major* artist" which illustrates that there is only a limited number of artists to which the Subpoena applied. This number decreases yet again, because Palace states that Live Nation is involved in approximately 40% of concerts at DTE. (Palace's Br. at ¶ 3.)

### III.   COUNTER-STATEMENT OF RULE 45 STANDARD FOR MOTION TO QUASH

"A nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted." In re Smirman, 267 F.R.D. 221, 223 (E.D. Mich. 2010) (citations omitted).  This burden is greater for a motion to quash than if the nonparty is seeking more limited protection.  Flanagan v. Wyndham Int'l, Inc., 231 F.R.D. 98 (D.D.C. 2005).  Whether a burden is undue, as contemplated by Federal Rule of Civil Procedure 45(c), requires weighing "the likely relevance of the requested material . . . against the burden . . . of producing the material." Id. (quoting EEOC v. Ford Motor Credit Co., 26 F.3d 44, 47 (6th Cir. 1994)).  While a non-party's status is relevant to this reasonableness determination, the court still must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.  Englar v. 41B District Court, No. 04-CV-73977, 2009 U.S. Dist. LEXIS 100949, *15-16 (E.D. Mich. Oct. 29, 2009).

Palace Sports cannot show that its burden of producing documents responsive to the subpoena outweighs the relevance of the documents Plaintiffs request.  Thus, Palace Sports cannot meet its burden and its motion to quash should be denied, and its objections should be overruled.

## IV.   PALACE SPORTS FAILED TO ESTABLISH SUFFICIENT GROUNDS FOR THIS COURT TO QUASH THE PLAINTIFFS' SUBPOENA

### A.   Palace Sports' Characterization Of Its Attempt To Seek Concurrence In The Relief Sought is Misleading and Ignores Material Facts that Moot its Objections

Although there was a teleconference among counsel for Plaintiffs, Live Nation, and Palace Sports on December 13, 2010, Palace Sports overstates its attempt to seek Plaintiffs' concurrence and continuously misrepresents the substance of the discussion.  Prior to this teleconference, Plaintiffs' counsel had no knowledge that Palace Sports objected to the Subpoena and did not intend to produce documents.  (See Affidavit of Abby L. Sacunas ("Sacunas Aff."), ¶ 6, attached hereto as Exhibit B.)  Instead, Plaintiffs' counsel was led to believe that the teleconference was an amicable call to discuss a coordinated effort between Live Nation and Palace Sports to produce responsive documents.  (Id., ¶ 4, Exhibit B; see also email from Franklin M. Rubinstein addressed to Abby L. Sacunas, dated December 8, 2010, a true copy of which is attached hereto as Exhibit C.)

The teleconference occurred on Monday, December 13, 2010.  (Sacunas Aff., ¶ 7, Exhibit B.)  In addition to in-house counsel for Palace Sports, Dennis Haffey of Dykema was in attendance, and took the lead on Palace Sports' behalf.  (Id., ¶ 8, Exhibit B.)  Mr. Haffey began the call by stating that Palace Sports had "numerous" objections to the Subpoena, suggesting Plaintiffs were attempting to circumvent some (non-existent) order preventing the discovery of the materials requested, and demanding that Plaintiffs withdraw the Subpoena and re-serve it sometime later after discovery from Live Nation had been fully exhausted.  (Id., ¶ 9, Exhibit B.)  Despite Plaintiffs' counsel's repeated offers to extend the time for Palace Sports to produce responsive documents and narrow the scope of the Subpoena to the extent Mr. Haffey could

explain the basis for his objections, Mr. Haffey ignored these offers and insisted that Plaintiffs voluntarily withdraw the subpoena.  (Id., ¶ ¶¶ 15-16, Exhibit B.)

Plaintiffs' amenability to resolving Palace Sports' objections amicably was emphasized in an e-mail immediately following the teleconference, which attached the Protective Order governing the Underlying Litigation, and restated counsel's willingness to discuss the scope and time to respond to the Subpoena.  (Id., ¶ 17, Exhibit B; see also email from Abby L. Sacunas to Dennis Haffey, dated December 13, 2010, a true copy of which is attached hereto as Exhibit D.) Palace Sports' argument that Plaintiffs were unwilling to cooperate is disingenuous.  Even if Palace Sports' counsel in his zeal during the call failed to recognize the offers counsel was making, Plaintiffs' willingness to find common ground was clearly expressed in the email correspondence immediately following the call.  (Sacunas Aff., ¶ 17, Exhibit B; see also Exh. D.) Mr. Haffey's response to that e-mail however, simply reiterated his demand that Plaintiffs should first get documents from Live Nation "and only thereafter identify what additional, much narrower, set of documents you needed from Palace Sports."  (Sacunas Aff., ¶ 18, Exhibit B; see also email from Dennis Haffey to Abby L. Sacunas, dated December 14, 2010, a true copy of which is attached hereto as Exhibit E.)

Palace Sports further mischaracterizes statements that it attributes to Plaintiffs' counsel in its brief in support of its motion to quash:

- At paragraph 19 of Palace Sports' Brief, it states that Plaintiffs' counsel: "was asked why she needed the subpoenaed documents that Live Nation did not have, and refused to respond except to state: 'I am not required to tell you what I am looking for.'"

- At paragraph 24 of Palace Sports' Brief, Palace Sports states that "[d]uring the December 13, 2010 telephone call among counsel regarding concurrence in this motion, plaintiffs' counsel declined to grant an extension, stating only that an extension would be 'considered' which was insufficient since a motion had to be filed the next day in order to be timely."

First, when asked what documents Plaintiffs sought with this subpoena, Plaintiffs' counsel explained that the subpoena targeted agreements between DTE and Live Nation as well as internal documents and correspondence reporting upon negotiations between Live Nation and DTE, and DTE and artists' agents, for an artist on a national, block-booked or multi-appearance tour with Live Nation to appear at DTE.  It was in response to Palace Sports' counsel's request for further specificity that Plaintiffs' counsel responded that she was in no position to determine, and was not required to speculate as to what documents Palace Sports might have in its possession that would be responsive to these requests.  (Sacunas Aff. at ¶ 10.)

Second, Palace Sports' counsel never requested an extension for a specified period of time (other than until such time that discovery from Live Nation had been fully exhausted), nor did he respond to inquiries as to the basis for his client's objections that would inform the consideration as to the length of a reasonable extension on the time to respond.  (Id. at ¶ 11.) Instead, he insisted Plaintiffs voluntarily withdraw the subpoena, and pursue discovery from Live Nation.  (Id. at ¶ 12; see also Exh. E.)

**B.     The Subpoena Seeks Highly Probative Information**

Rule 26 establishes one standard for assessing the scope of discovery for both parties and non-parties.  Laethem Equip. Co. v. Deere and Co., No. 05-CV-10113, 2007 WL 2873981, *4 (E.D. Mich. Sept. 24, 2007).

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . [r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  The requesting party has the burden to prove relevancy, but only if the relevancy of the information sought is not self-evident.  Tequila Centinela v. Bacardi & Co. Ltd., 242 F.R.D. 1, 9 (D.D.C. 2007).  Further:

> A district court whose only connection with a case is supervision
> of discovery ancillary to an action in another district should be
> especially hesitant to pass judgment on what constitutes relevant
> evidence thereunder.  Where relevance is in doubt . . . the court
> should be permissive.

Truswal Sys. Corp. v. Hydro-Air Eng'r, Inc., 813 F.2d 1207, 1211-12 (Fed. Cir. 1987)); see also

In re Honeywell Int'l, Inc. Sec. Litig., 230 F.R.D. 293, 301 (S.D.N.Y. 2003).

As Palace Sports generally objects to the entire Subpoena, Plaintiffs will generally

address the relevance of the documents sought therein.  Among other things, Plaintiffs assert

monopoly and attempted monopoly claims against Live Nation for abuse of its market power,

Verizon Commc'ns Inc. v. Law Offices of Curtis & Trinko, 540 U.S. 398, 407 (2004) (willful

maintenance of a monopoly is unlawful), and leveraging claims, United States v. Griffith, 334

U.S. 100, 107 (1948) ("it is unlawful for operator of circuit of motion picture theaters to use his

monopoly in towns in which he has no competitors to obtain exclusive rights to films for towns

in which he has competitors.").  See also Nobody In Particular Presents, Inc. v. Clear Channel

Commc'ns, Inc., 311 F. Supp. 2d 1048 (D. Colo. 2004) (denying music promoters access to

artists is exclusory conduct demonstrating willful acquisition or maintenance of monopoly

power).

As discussed above, the extent of Live Nation's relationship with DTE, a non-Live

Nation owned venue, is directly related to these claims in that Plaintiffs are entitled to fairly and

accurately assess Live Nation's power and control in the amphitheatre market in the United

States, and to determine which major metropolitan markets, if any, are truly free from Live

Nation's domination.  Further, the specifics of the arrangement between Live Nation and DTE,

and any attempts by Live Nation to gain control of DTE, and the discussions surrounding such

conduct, go to Plaintiffs' claims that Live Nation is attempting to extend its power in the venue

market into those geographic regions in which it does not already enjoy a monopoly.

**C.     The Argument that Plaintiffs Must Exhaust Discovery With Live Nation is Without Merit**

Plaintiffs are not required to first exhaust discovery with the defendant prior to seeking discovery from a non-party.[3] Olympic Refining Co. v. Carter, 332 F.2d 260, 266 (9th Cir. 1964) ("It is immaterial that [plaintiff] could possibly obtain the same information . . . [from defendants]. It is entitled to know what those companies and the alleged co-conspirators told the Government, and this requires examination of the documents which were exchanged . . . ."); Viacom Int'l, Inc. v. YouTube, Inc., No. Civ. A. 08-80129, 2008 U.S. Dist. LEXIS 79777 (N.D. Cal. Aug. 18, 2008) (no general rule prohibiting plaintiffs from seeking non-party discovery of documents likely to be in defendants' possession); Koch v. Greenberg, No. 07-9600, 2009 U.S. Dist. LEXIS 61913, *18-19 (S.D.N.Y. July 14, 2009) (non-party shall comply with subpoena prior to party's production); Ireh v. Nassau Univ. Med. Ctr., No. Civ. A. 06-09, 2008 U.S. Dist. LEXIS 76583, *17 (E.D.N.Y. Sept. 17, 2008) (subpoena for plaintiff's file may served on non-party hospital even though this file was not sought in discovery addressed to plaintiff); Software Rights Archive, LLC v. Google, Inc., No. Civ. A. 08-03172, 2009 U.S. Dist. LEXIS 43835, *6 (D. Del. May 21, 2009) ("there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party").

This principle has particular force in cases in which plaintiffs seek a "non-well-defined set" of documents, meaning "a set whose completeness is not readily verifiable." Viacom, 2008 U.S. Dist. LEXIS 79777, at *8. "In appropriate circumstances, production from a third party will be compelled in the face of an argument that the "same" documents could be obtained from a

---

[3] Notably, the District Court for the Central District of California refused to accept the exact argument now posed by Palace Sports, and instead recently granted, albeit in part, Plaintiffs' motion to compel non-party William Morris Endeavor Entertainment, LLC to respond to Plaintiffs' subpoena *duces tecum*, suggesting non-party discovery may proceed prior to exhaustion of party discovery.

party, because there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions." Id. at *7 (quoting Visto Corp. v. Smartner Info. Sys., Ltd., Nos. Civ. A. 06-80339, 06-80352, 2007 WL 218771, at *3 (N.D. Cal. Jan. 29, 2007)). There is no way to verify the completeness of these types of documents, even if they are produced by a party to the litigation. Id. at *8-9.

The documents sought by the instant subpoena are agreements, drafts of agreements, internal communications and communications with artists, their agents, and Live Nation for artists on Live Nation national, block-booked or multi-appearance tours negotiating to appear at DTE. Even if one side of these agreements, conversations and negotiations arguably could be obtained from Live Nation, that does not negate the need, or the right, for Plaintiffs to seek out the balance of those conversations from Palace Sports. For instance, Palace Sports' side of the communications may reveal DTE and artists' reactions to the extent of Live Nation's demands for an artist to appear at DTE, and, as such, are highly probative of the extent to which Live Nation's conduct has had an anticompetitive effect. They may similarly support Plaintiffs' argument that Live Nation uses its promotional market power to get artists planning national or multi-appearance tours to skip geographic markets entirely if their demands are not met. In short, without DTE's, and other third parties' productions, Plaintiffs would have no way to verify the completeness of the discovery it received from Live Nation.

What is more, the parties to the Underlying Litigation have been involved in extensive discovery, and exchanged hundreds of thousands of pages, all of which has been reviewed, and none of which contained the specific, targeted information and documents sought from Palace Sports. (Id. at ¶ 14.) Palace Sports' Motion conspicuously ignores this part of the discussion in suggesting that Plaintiffs made no effort to exhaust discovery from Live Nation before serving Palace Sports with a subpoena. At the very least, the extent of discovery exchanged and

reviewed in the Underlying Litigation prior to the service of the subject subpoena, and the impending close of discovery on March 31, 2011 moots Palace Sports' objection on this basis.

**D.     A Confidentiality Order Has Been Entered That Adequately Protects Palace Sports' Confidential And Proprietary Business Concerns**

The fact that a subpoena seeks confidential information is not a legitimate basis for noncompliance. Simon Prop. Group, Inc. v. Taubman Centers, Inc., No. 07-X-51024, 2008 U.S. Dist. LEXIS 5065, *11 (E.D. Mich. Jan. 24, 2008). Even a formalized private agreement to keep materials confidential does not prevent the discovery of those materials. See e.g., United States. v. Davis, 702 F.2d 418, 422 (2d Cir.1983) (granting discovery of material protected by a confidentiality agreement and recognizing that a private confidentiality agreement does not protect material from discovery as a formal protective order would); Zoom Imaging, L.P. v. St. Luke's Hosp. and Health Network, 513 F.Supp.2d 411, 417 (E.D.Pa. 2007) (holding that documents created by an outside consultant were discoverable despite confidentiality agreements); RLI Ins. Co. v. Commericial Money Center, Inc., Nos. CIV.02CV192BTM(AJB), CIV.02CV199BTM(AJB), CIV.02CV218BTM(AJB), CIV.02CV308BTM(AJB), CIV.02CV589BTM(AJB) and CIV02CV1438BTM(AJB), 2002 WL 32081854, at *5-6 (August 16, 2002 S.D.Cal.) (finding that a confidentiality agreement, standing alone, cannot preclude later discovery under the Federal Rules of Civil Procedure); Grumman Aerospace Corp. v. Titanium Metals Corp. of Am., 91 F.R.D. 84, 87 (E.D.N.Y. 1981) (holding a confidentiality agreement with a consultant was not a basis for quashing a discovery subpoena in an antitrust case).

In Simon Prop. Group, the court enforced a subpoena served on a non-party by its competitor in the business of developing and operating large shopping malls. 2008 U.S. Dist. LEXIS 5065, *2. The non-party's argument that the discovery would reveal confidential business information was "not determinative," because there was a stipulated confidentiality

order in place in the underlying action in Nevada that would "for the most part, adequately protect [the non-party's] interests." Id. at *12. Palace's argument that it would breach confidentiality agreements that it has with other third parties is wholly unsupportable. "No one can 'agree' with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off." Gotham Holdings, LP v. Health Grades, Inc., 580 F.3d 664, 665 (7th Cir. 2009).

In the Underlying Litigation, a Stipulated Order Regarding Confidentiality of Discovery Material was entered as an Order of the Court (hereinafter, "Confidentiality Stipulation") (a true copy of the Confidentiality Stipulation was provided to counsel for Palace Sports,[4] and is attached hereto as Exhibit F). The Confidentiality Stipulation extends to documents which any **non-party** produces.  Any documents a non-party designates as Confidential may only be disclosed to the Court, court reporters and other support staff, counsel for the parties, representatives of the parties involved in this litigation and witnesses. Palace Sports may also designate documents "Highly Confidential" in which event they may not be disclosed to any employees of the parties, including "in house counsel, legal assistants and other legal staff." (See Exh. F at ¶13 (f)). Further, the Confidentiality Stipulation contains limitations designed to protect the confidentiality of any confidential documents utilized at trial. (Id.) These provisions contain more than adequate protection for any confidential information Palace Sports produces.

### E.   Palace Sports' Claims Of Undue Burden and Privilege Were Not Asserted With Required Specificity

The argument that requested discovery is unduly burdensome and expensive must be supported by sufficient evidentiary showing of burden or cost, and not merely the unsupported assertions by Palace Sports' counsel. Further, sweeping and generalized claims of privilege do

---

[4] Palace Sports' representation that it "on its own had to find out about the existence of a Protective Order in the Maryland case" is disingenuous. A copy of the Protective Order was, at the very least, attached to the e-mail from Ms. Sacunas on December 13th. See Exh. D.

not provide grounds to quash a subpoena. Fed. R. Civ. P. 45(d)(2) ("When information subject to a subpoena is withheld on a claim that it is privileged, or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced."). See also Ispat Inland, Inc. v. Kemper Envtl., Ltd., No. 06-60, 2007 U.S. Dist. LEXIS 16718, *7 (D.C. Minn. March 8, 2007) (sweeping, broad statements that production would be burdensome and unspecified claims that the documents were privileged are insufficient to satisfy non-party's burden of proof); Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996) (non-party withholding subpoenaed information on ground of privilege must describe nature of documents in manner that will enable other parties to assess applicability of privilege).

Palace Sports' attempt to assert a specific category of privileged documents, for example those "relating to negotiating strategy," falls short. Indeed, the "attorney-client privilege attaches to direct communications between a client and his attorney as well as communications made through their respective agents." Laethem Equip. Co., supra, 2007 WL 2873981, *5. If the client chooses to share the substance of the communication to a third party, for example, Live Nation or an agent negotiating an artist's appearance at DTE, then the information contained within that communication is no longer privileged. Whereas Plaintiffs understand that documents relating to negotiating strategy between Palace Sports and its counsel may be subject to the attorney-client privilege, the substance of the communication, once shared during negotiations, is no longer privileged information and is subject to disclosure. Thus, Palace Sports' argument that "[a]ttorneys for Palace Sports are routinely involved in negotiations with Live Nation and others, including event-by-event and artist-by-artist," and thus constitute privileged communications is without merit.

F.   **Palace Sports Has Not Adequately Described Its Burden To Produce Documents And It Is Premature For This Court To Award Fees & Costs To Palace Sports For The Production Of Responsive Documents**

The only documents Plaintiffs requested relate specifically to agreements and negotiations related to Live Nation artists' appearances at DTE.  Plaintiffs have not asked for documents related to any other venue, the production or performance of those events at DTE or to any other matter involving the event that Palace Sports raises, including for example food and beverage, merchandising, accounting, and security.  (Palace Sports' Br. at ¶ 21.)

Palace Sports argues that the documents are organized in such a fashion that it "could take dozens and dozens if not hundreds of hours" to find responsive documents.  (Id.)  Even if this is true, it is because of the unique manner in which Palace Sports maintains its business records.  Plaintiffs cannot be foreclosed from appropriately-sought discovery simply because Palace Sports chooses to store its documents in a manner not conducive to retrieval.  A party who has the means to produce documents in its possession and is served with a subpoena duces tecum will not be excused from doing so based on self-created inability or passive inactivity when reasonable effort might secure compliance.  See 98 C.J.S. Witnesses § 48 (West Supp. 2009) (citing People v. Rezek, 103 N.E.2d 127, 132 (Ill. 1951)).

Palace Sports argues that it should be entitled to "the costs associated with their discovery requests, including Palace Sports' attorneys fees and costs, compensation for employee and attorney time in reviewing files, collecting documents, segregating and redacting privileged and other objectionable documents, and producing any documents ultimately produced."  (Palace Sports' Br. at ¶ 25.)  For the reasons discussed herein, the service of a subpoena upon Palace Sports was entirely reasonable.  The documents sought from Palace Sports, in large part, are uniquely in Palace Sports' possession, and in any event, Plaintiffs have no way to certify the completeness of Live Nation's production other than to obtain documents from third-parties.  Moreover, Plaintiffs' counsel was, and remains, amenable to discussing how the subpoena could

potentially be narrowed to target documents in Palace Sports' possession, as well as search

parameters that can be run for responsive documents.  An award of fees under Rule 45(c)(1) is

therefore inappropriate.  What is more, an assessment of costs is more suitably determined

following the non-party's production, at which time the court may evaluate whether the cost of

production was an unreasonable burden.  Ghandi v. Police Dep't of the City of Detroit, 74 F.R.D.

115, 125 (E.D. Mich. 1977).  Palace Sports has made no effort to search for much less produce

documents responsive to the subpoena, nor made any attempt to even serve written responses to

the subpoena.  There is therefore no basis to advance fees or costs against Plaintiffs.

## V.    CONCLUSION

For all of the reasons set forth herein, and in the accompanying affidavit, Plaintiffs

request that this Court overrule Palace Sports & Entertainment's objections and deny its motion

to quash the subpoena in its entirety.

Respectfully submitted,

MOFFETT, VITU, LASCOE & PACKUS

Dated: January 10, 2011              By:  _____/S/_____

Stephen Moffett
Brown Street Centre
225 East Brown Street, Suite 340
Birmingham, MI 48009
(248) 646-5100
smoffett@mdaal.com

*Attorney for It's My Party, Inc. and It's My*
*Amphitheatre, Inc.*

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that a copy of the Plaintiffs' Opposition to Non-Party's

Objections and Motion To Quash Subpoena and this proof of service was electronically filed:

and also served via first class mail upon:

Dennis M. Haffey
Kerry K. Cahill
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304

and also served via first class mail upon:

*Attorneys for Palace Sports & Entertainment, Inc.*

Franklin M. Rubinstein
WILSON SONSINI GOODRICH & ROSATTI, P.C.
1700 K. Street, N.W.
Washington, D.C. 20006

Dated: January 10, 2011                    By: _____/S/_____
                                           Helene S. Coulon